IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CECILIA SOTO, | § |
| | § |
| Plaintiff | § |
| | § |
| VS. | § CIVIL ACTION NO. A-06-CA-819-AA |
| | § |
| LIBERTY MUTUAL FIRE INSURANCE | § |
| COMPANY, | § |
| | § |
| Defendant | § |

**PLAINTIFF'S MOTION TO COMPEL
AND BRIEF IN SUPPORT**

TO THE HONORABLE ANDREW AUSTIN:

1.      Plaintiff files this Motion to Compel in accordance with F.R.C.P. 37(a).

**THE DISCOVERY REQUESTS**

2.      On Nov. 28, 2006, Plaintiff sent her first request for production to defendant. A true and correct copy of the request is attached hereto as Exhibit A.

3.      Among other requests, Plaintiff made the following requests that would cover the defendant's claim file:

17.      A full and complete copy of the claims file or any other documents or memoranda maintained by you regarding Plaintiff relating to the claim made the basis of this suit.

20.      The entire file related to Cecilia Soto's claim, including all documents which record or preserve any factual information, observations, witness identities, or the results of any investigation, study or inquiry concerning the investigation, review, analysis, peer-review, decision-making process, or responses with respect to Dr. Soto's claim to the extent such documents were created before Defendants were served with process in this lawsuit.

1

24.     A copy of any report, correspondence, memoranda, adjuster's notes or journal or log, or any other documents prepared at any time prior to the service of citation in this suit, at the request of Defendants, adjustors, claims services or investigators, regarding the facts alleged in this lawsuit of any of the injuries of damages alleged.

26.     Any and all documents (including those maintained electronically) which were generated during the course of the investigation, review, analysis, peer-review, decision-making process, or responses to Cecilia Soto's claim for benefits.

27.     All internal communications, memoranda, meeting notes, personal notes of the Defendant's employees, telephone records, computer stored information, or other data relating or referring in any way to the facts or claims alleged in this lawsuit.

28.     All documents, electronic data, or tangible items which discuss or reflect any acts or omissions of Defendant, or any of Defendant's employees, with respect to the investigation, review, analysis, peer-review, decision-making process, or responses to Cecilia Soto's claim, except for attorney-client communications and attorney work product dated after the date on which this suit was filed.

37.     Copies of any and all communications (whether written, electronic, or otherwise) by and between Defendant and any person, company, or entity Defendant has had evaluate the medical records of Plaintiff stemming from the claims asserted by Plaintiff in this cause. This request encompasses all communications, whether letter, memo, facsimile, email, or any other communication of any kind.

4.     Defendant objected to each request and withheld portions of the claim file. A copy of the Defendant's responses are attached as Exhibit B.

## THE CLAIMS FILE IS DISCOVERABLE

5.     The real issue in determining what portions of the claims file is discoverable is what portions of the file are protected by privilege. As the Court is aware, in state law claims, federal courts turn to the laws of the state to determine whether privileges apply. *See* Fed. R. Ev. 501. In Texas, the burden is on the party asserting a privilege from discovery to produce evidence concerning its applicability. *In re Texas Farmers' Ins. Exchange,* 990 S.W.2d 337, 340 (Tex. App. - Texarkana 1999, mand. denied).

6.    Generally, information contained in a claims file is discoverable. *See In re Texas Farmers' Ins. Exchange*, 990 S.W.2d at 340 (claim file not exempt from discovery); *Eckermann v. Williams*, 740 S.W.2d 23, 25 (Tex. App. Austin, 1987, no writ).

7.    However, portions of the claim file may not be discoverable if protected by the work-product privilege. *See In re Texas Farmers' Ins. Exchange*, 990 S.W.2d at 340 (documents created after suit filed were made in anticipation of litigation and protected); *Eckermann*, 740 S.W.2d at 25 (holding that items in claim file created before date of anticipation of litigation were discoverable, but items created after that date were protected by the work-product privilege).

8.    The Texas Rules of Civil Procedure define work product as:

(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees or agents; or

(2) a communication made in anticipation of litigation or for trial between a party and the party's representative or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees or agents. TEX. R. CIV. P. 192.5(a).

9.    Litigation may be anticipated when two tests are met:

(1) whenever the circumstances surrounding the investigation would have indicated to a reasonable person that there was a substantial chance of litigation, and

(2) the party asserting the exemption had a good faith belief that litigation would ensue. *National Tank Co. v. Brotherton*, 851. S.W.2d 193, 204 (Tex. 1995).

10.    The investigation must actually be conducted for the purpose of preparing for litigation. An investigation is not conducted in anticipation of litigation if it is prepared for some other purpose. *Id.* Specifically, the Supreme Court has cautioned that not all claims investigations

conducted by insurance companies are privileged:

> An insurance company, like any other party, must establish that the circumstances reasonably indicated a substantial chance of litigation, that the insurer believed in good faith that litigation would ensue, and that the investigation was conducted primarily to prepare for the expected litigation. An insurer routinely investigating a claim to determine whether coverage exists under its policy will in many cases not be able to meet these criteria. *Id.* at 206, n. 13 (emphasis added).

If the insurance company conducts an investigation for more than one reason, the investigation is only protected if it was conducted primarily to prepare for expected litigation. *Id.* if the primary motivating factor of the investigation is to determine whether the claim should be paid or settled and the potential lawsuit avoided, then the work is not "in anticipation of litigation." *In re Texas Farmers Ins. Exchange,* 990 S.W.2d at 342.

## WHEN WAS THE INVESTIGATION "IN ANTICIPATION OF LITIGATION"

11.    In its interrogatory responses, Liberty Mutual claims that it anticipated litigation on February 13, 2004, the date the insurer of the rental car driven by the negligent driver denied liability for coverage. *See Liberty Mutual's Answers to Plaintiff's First Set of Interrogatories,* interrogatory number 5, attached as Exhibit C. While Liberty Mutual could certainly anticipate that Dr. Soto would make a claim at that time, unless Liberty Mutual knew that it would make no attempt to settle Dr. Soto's claim, this was not the date that a reasonable person would or Liberty Mutual did anticipate litigation. If they did decide they wouldn't pay before conducting an investigation, Dr. Soto would respectfully request a stipulation to that effect.

12.    This is a case where Dr. Soto is permanently impaired and continues to receive treatment. From September 2004, when plaintiff's counsel became involved in the case, until the summer of 2006, Liberty Mutual continued to ask for additional information and plaintiff continued to

provide it. During this time, various Liberty Mutual adjusters sent letters indicating that they were still doing the investigation to evaluate Dr. Soto's claim. Copies of those letters are attached as Exhibit D.

13.    Plaintiff sent a settlement package to Liberty Mutual on February 28, 2006. A copy of that settlement package (without attachments) is attached as Exhibit E.

14.    Plaintiff remained patient about attempting to resolve this matter until the end of August 2006. On August 16, 2006, Plaintiff's counsel wrote the adjuster a letter that plaintiff was frustrated with the lack of response and that plaintiff's counsel would start drafting a pleading in case Liberty Mutual failed to tender its policy limits. A copy of that letter is attached as Exhibit F. On August 28, 2006, plaintiff's counsel wrote another letter to John Franciosa, a new adjuster on the file, stating that plaintiff was granting Liberty Mutual another week to respond to the settlement offer before filing suit. A copy of that letter is attached as Exhibit G. This was the first time that suit was threatened, and the first time that a reasonable person would have reasonably anticipated that litigation was imminent.

15.    However, the inquiry does not end there. Even after that date, it appears that Liberty Mutual subjectively didn't believe litigation would ensue. On August 31, 2006, Mr. Franciosa, the new Liberty Mutual adjuster, responded to the August letters by writing that he was still waiting for records, and that "upon receipt of these records, I will evaluate this claim for settlement purposes." A copy of that letter is attached as Exhibit H. This demonstrates that the primary purpose of Liberty Mutual's investigation up to that point was not work done for litigation, but work done to evaluate the case for settlement purposes.

16.    Because the evidence indicates that the primary purpose of the adjusters' investigations

up through August 31, 2006 was to determine whether the claim should be paid or settled and the potential lawsuit avoided, then the work is not "in anticipation of litigation." *In re Texas Farmers Ins. Exchange,* 990 S.W.2d at 342. From Liberty Mutual's correspondence, it appears that it did not conduct any work in anticipation of litigation until September 6, 2006, the date the suit was actually filed.

17. Wherefore, premises considered, plaintiff prays that its Motion to Compel be granted and that Liberty Mutual be required to produce all investigative documents that were created up through September 6, 2006, and for general relief.

Respectfully Submitted,

PERLMUTTER & SCHUELKE, L.L.P.
Hartland Plaza
1717 West Sixth Street, Suite 375
Austin, Texas 78703
Telephone: (512) 476-4944
Facsimile: (512) 476-6218

By: _____
MARK L. PERLMUTTER
State Bar No. 15793700

ATTORNEY FOR PLAINTIFF

6

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing document has been forwarded to all parties pursuant to Federal Rule of Civil Procedures on the _6th_ day of March, 2007, addressed as follows:

*Via First Class Mail to:*
Ms. Catherine L. Hanna
Hanna & Plaut, LLP
106 East 6th Street, Ste. 600
Austin, Texas 78701

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CECILIA SOTO,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. A-06-CA-819-AA** |
| | § | |
| **LIBERTY MUTUAL FIRE INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant** | § | |

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

Came to be heard *Plaintiff's Motion to Compel.* The Court finds that the motion should

be granted.

IT IS THEREFORE ORDERED that Defendant's objections to plaintiff's requests for

production numbers 17, 20, 24, 26, 27, 28, and 37 are overruled.

IT IS FURTHER ORDERED that Defendant shall produce all documents responsive to

plaintiff's requests for production numbers 17, 20, 24, 26, 27, 28, and 37, including all

documents prepared before September 6, 2006.

Signed this _____ day of _____, 2007.

_____
Honorable Andrew Austin

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CECILIA SOTO,                              §
                                          §
      **Plaintiff**                     §
                                          §
VS.                                       § CIVIL ACTION NO. A-06-CA-819-LY
                                          §
LIBERTY MUTUAL FIRE INSURANCE             §
COMPANY,                                  §
                                          §
      **Defendant**                    §

## PLAINTIFF'S REQUEST FOR PRODUCTION TO DEFENDANT

TO:    Liberty Mutual Fire Insurance Company, by and through its attorney of record, Catherine Hanna, Hanna & Plaut, LLP, 106 East 6th Street, Ste. 600, Austin, Texas 78701.

NOW COMES Plaintiff, Cecilia Soto, and in accordance with the provisions of the Federal Rules of Civil Procedure, hereby requests Defendant, Liberty Mutual Fire Insurance Company, to provide certain documents as herein described for inspection and/or copying.

## DEFINITIONS AND INSTRUCTIONS

1.     "You" or "Your" means the party to whom these requests are propounded, and includes, but is not limited to, any agents, officers, employees, representatives, assigns or attorneys for said party.

2.     "Document" or "Documents" includes, but is not limited to, any video or audio tapes; slides; negatives; photographs; computer disks, electronic files, writings of any kind; papers of any kind (on which appears marking, printing, or images of any kind); drafts or final copies; computer input and output; and any and every other written, printed, graphic, pictorial or electronically recorded matter of any kind whatsoever.

EX:A

Plaintiff requests that these items be supplied to her attorneys, Perlmutter & Schuelke, L.L.P., Hartland Plaza, 1717 West Sixth Street, Suite 375, Austin, Texas 78703, at a time and place and in a manner reasonable to all concerned as may be determined by the Plaintiff and that such performance take place within thirty (30) days of the date Defendant receives this request.

Respectfully Submitted,

PERLMUTTER & SCHUELKE, L.L.P.
Hartland Plaza
1717 West Sixth Street, Suite 375
Austin, Texas 78703
Telephone: (512) 476-4944
Facsimile: (512) 476-6218

By: _____
MARK L. PERLMUTTER
State Bar No. 15793700

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing document has been forwarded to all parties pursuant to Federal Rule of Civil Procedures on the ᴄ 5ᵗʰ day of Nov. , 2006, addressed as follows:

*Via First Class Mail to:*
Ms. Catherine L. Hanna
Hanna & Plaut, LLP
106 East 6ᵗʰ Street, Ste. 600
Austin, Texas 78701

## *REQUESTS FOR PRODUCTION*

1.  Any written, audio taped or video taped statement given by Plaintiff which is in the possession, custody or control of this defendant. This request specifically requests both the transcript of any such statement, as well as a copy of the original recording.

2.  Any document signed, written or authored by Plaintiff which is in the possession, custody or control of this defendant.

3.  A *complete* copy of the policy of insurance made the basis of this claim.

4.  Any correspondence sent to Plaintiff and/or Plaintiff's counsel from any insurance company, insurance agent, insurance broker, adjuster or claims handler regarding the incident made the basis of this suit.

5.  All documents related to the incident made the basis of this suit which were created before the date which this defendant has identified in response to Plaintiff's First Set of Interrogatories that it first anticipated that litigation might arise out of the incident made the basis of this suit.

6.  All documents which support this defendant's claim that, by the date identified in Defendant's response to Plaintiff's interrogatories, it anticipated that litigation might arise out of the incident made the basis of this suit.

7.  Any and all photographs, audio recordings and/or visual recordings of any person with knowledge of relevant facts as identified in disclosure and/or interrogatory responses.

8.  All documents which have been obtained by any defendant herein via an authorization or release which had been executed or signed by Plaintiff.

9.  All medical and/or health care records and billing records regarding Plaintiff.

10. All correspondence and other documents sent to or received from any of Plaintiff's physician, chiropractors and all other health care providers, and which relate to Plaintiff.

11. All psychological and/or counseling records regarding Plaintiff.

12. All records regarding Plaintiff's wages and other income for the last ten (10) years.

13. All records regarding Plaintiff's employment history.

14. All school records regarding Plaintiff.

15. All records regarding any prior claims and/or lawsuits for personal injury which have been asserted by Plaintiff.

16. All documents regarding any defense or indemnity agreements pertaining to any party hereto and which may be applicable to the incident made the basis of this suit.

17. A full and complete copy of the claims file or any other documents or memoranda maintained by you regarding Plaintiff relating to the claim made the basis of this suit.

18. All documents or manuals used or relating to the handling of this claim, including but not limited to, any Liberty Mutual procedures manual, Bodily Injury Initiative Handbook, or Total Liberty Care-Branch Office Manual.

19. All documents reflecting each substantially similar claim, complaint, or lawsuit made for the past five years in the State of Texas– whether in litigation, arbitration, mediation, or with any governmental or regulatory entity. "Substantially similar claims" means claims made that you violated the Insurance Code, DTPA, breached an insurance contract, or acted in violation of your duty of "good faith and fair dealing" in your handling of a claim for benefits related to the theft of property.

20. The entire file related to Cecilia Soto's claim, including all documents which record or preserve any factual information, observations, witness identities, or the results of any investigation, study or inquiry concerning the investigation, review, analysis, peer-review, decision-making process, or responses with respect to Dr. Soto's claim to the extent that such documents were created before Defendants were served with process in this lawsuit.

21. All written or recorded statements, and any summaries or reports thereof, which contain, report or record the recollection of any person concerning any matter related to the claims made in this lawsuit.

22. All photographs, videotapes, diagrams, sketches, films, electronically created images or other depictions of any fact or subject which is alleged to be relevant to any of the matters at issue in this case.

23. A copy of any procedures, policies, rules, directives or informal practices created, adopted or promulgated in the last five (5) years related to the investigation, review, analysis, peer-review, decision-making process, or response to claims for benefits under UIM/UM policies.

24. A copy of any report, correspondence, memoranda, adjuster's notes or journal or log, or any other documents prepared at any time prior to the service of citation in this suit, at the request of Defendants, adjustors, claims services or investigators, regarding the facts alleged in this lawsuit of any of the injuries of damages alleged.

25. A copy of any analysis, audit or survey concerning Defendants' claims handling practices

made in the last five (5) years.

23.  Any documents regarding any payments made by, or on behalf of, Defendants to Plaintiff (or to any other person on his behalf) as a consequence of her UIM/UM claim.

24.  Any document, photograph or other tangible item of any description which you contend supports your allegation (if any) that Defendants properly handled or responded to Cecilia Soto's claim.

25.  All agreements and understandings made or entered into by, or on behalf of, the Defendants with any other party, potential party, witness, or other person identified as having been involved in the investigation, review, analysis, peer-review, decision-making process, or responses with respect to Cecilia Soto's claim.

26.  Any and all documents (including those maintained electronically) which were generated during the course of the investigation, review, analysis, peer-review, decision-making process, or responses to Cecilia Soto's claim for benefits.

27.  All internal communications memoranda, meeting notes, personal notes of the Defendants' employees, telephone records, computer stored information or other data relating or referring in any way to the facts or claims alleged in this lawsuit.

28.  All documents, electronic data, or tangible items which discuss or reflect any acts or omissions of Defendants, or any of Defendants' employees, with respect to the investigation, review, analysis, peer-review, decision-making process, or responses to Cecilia Soto's claim, except for attorney-client communications and attorney work product dated after the date on which this suit was filed.

29.  Any documents, handbooks, or other documents related to the use of any computer program utilized to evaluate Plaintiff's claims.

30.  Any documents, reports, or memoranda relied upon in making Defendants' decision(s) in how to respond to Cecilia Soto's claim.

31.  The underwriting file for the insurance policies in effect for Cecilia Soto which could potentially provide coverage for the losses claimed by Cecilia Soto, including any and all application(s) completed for such coverage.

32.  Copies of the documents, manuals, and training materials, including audio and/or video tapes used in training, overseeing, or supervising your personnel employed in adjusting first party claims through insurance policies issued by you for the past five (5) years.

33.  Copies of all advertisements, brochures, newsletters or informative literature that you provided to the public or assisted in making available to the public regarding the benefits and services provided by you with respect to payment of benefits for property theft/loss in

the last five (5) years.

34. Copies of the "job descriptions" for all Liberty Mutual agents, staff/employees, adjustors, or to other persons that were involved in any way in the sale of the subject policy(ies), the evaluation of Plaintiff's claim, or investigation of the claim or Defendants' post-claim response.

35. Copies of the employment files for all employees of Defendants who are listed as persons with knowledge in Defendant's Initial Disclosures, as well as the person with the most knowledge of Plaintiff's claim and the handling of same in this case.

36. A curriculum vitae or resume, written report, bibliography, fee agreement and list of cases each expert has testified in over the past ten years, whether live or by deposition for any individual whom you may call as an expert witness in the trial of this matter.

37. Copies of any and all communications (whether written, electronic, or otherwise) by and between Defendant and any person, company, or entity Defendant has had evaluate the medical records of Plaintiff stemming from the claims asserted by Plaintiff in this cause. This request encompasses all communications, whether letter, memo, facsimile, email, or any other communication of any kind.

38. All documents relating to any health care treatment of Plaintiff, as a result of this accident in the possession, custody or control of you or your attorney or representative.

39. All documents relating to any health care treatment of Plaintiff not as a result of this accident which are in the possession, custody or control of you or your attorney of representative.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **CECILIA SOTO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. A 06CV 819 LY** |
| | § | |
| **LIBERTY MUTUAL FIRE** | § | |
| **INSURANCE COMPANY,** | § | |
| **Defendant.** | § | |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S
## REQUEST FOR PRODUCTION

To:    Cecilia Soto, by and through her attorney of Record, Mark L. Perlmutter or C. Brooks Schuelke. PERLMUTTER & SCHUELKE, LLP, 1717 W. 6th Street, Suite 375, Austin, Texas 78703.

COMES NOW Liberty Mutual Fire Insurance Company, Defendant in the above-entitled and numbered cause and serves these Objections and Responses to Plaintiff's Request for Production pursuant to the Federal Rules of Civil Procedure.

Respectfully submitted,

HANNA & PLAUT, L.L.P.
The Littlefield Building
106 E. Sixth Street, Suite 600
Austin, Texas 78701
Telephone:    (512) 472-7700
Facsimile:    (512) 472-0205

By: _____
　　　　　Catherine L. Hanna
　　　　　State Bar No. 08918280
　　　　　Charlotte Salter
　　　　　State Bar No. 15145750

**ATTORNEYS FOR DEFENDANT, LIBERTY MUTUAL FIRE INSURANCE COMPANY**

EX: B

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing document has been forwarded to all parties pursuant to the Federal Rules of Civil Procedure on the ____ day of _____ 2007, addressed as follows:

Mark L. Perlmutter
C. Brooks Schuelke
Perlmutter & Schuelke, L.L.P.
1717 West Sixth Street, Suite 375
Austin, Texas 78703


_____
Catherine L. Hanna

## REQUEST FOR PRODUCTION

1.    Any written, audio taped or videotaped statement given by Plaintiff which is in the possession, custody or control of this defendant.  This request specifically requests both the transcript of any such statement, as well as a copy of the original recording.

**RESPONSE:**

None.

2.    Any document signed, written or authored by Plaintiff which is in the possession, custody or control of this defendant.

**RESPONSE:**

To be produced, if any.

3.    A *complete* copy of the policy of insurance made the basis of this claim.

**RESPONSE:**

To be produced.

4.    Any correspondence sent to Plaintiff and/or Plaintiff's counsel from any insurance company, insurance agent, insurance broker, adjuster or claims handler regarding the incident made the basis of this suit.

**RESPONSE:**

To be produced.

5.    All documents related to the incident made the basis of this suit which were created before the date which this defendant has identified in response to Plaintiff's First Set of Interrogatories that it first anticipated that litigation might arise out of the incident made the basis of this suit.

**RESPONSE:**

Liberty objects to this request on the grounds that it seeks documents that are protected by the work product privilege and it is overbroad in that it does not specify the type or category of documents sought. Subject to and without waiver

of the foregoing objections, see documents produced in response to Request for Production No. 17.

6.      All documents which support this defendant's claim that, by the date identified in Defendant's response to Plaintiff's interrogatories, it anticipated that litigation might arise out of the incident made the basis of this suit.

**RESPONSE:**

Liberty objects to this request on the grounds that it is overbroad in that it does not specify the type or category of documents sought and it seeks information protected by the work product privilege. Subject to the foregoing objections, non-privileged documents responsive to this request will be produced.

7.      Any and all photographs, audio recordings and/or visual recordings of any person with knowledge of relevant facts as identified in disclosure and/or interrogatory responses.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it is overbroad in that it is not limited by relevant time. Subject to the foregoing objections, none.

8.      All documents which have been obtained by any defendant herein via an authorization or release which had been executed or signed by Plaintiff.

**RESPONSE:**

To be produced.

9.      All medical and/or health care records and billing records regarding Plaintiff.

**RESPONSE:**

To be produced.

10.     All correspondence and other documents sent to or received from any of Plaintiff's physician, chiropractors and all other health care providers, and which relate to Plaintiff.

**Defendant's Responses to Plaintiff's Request for Production**                    **Page 4**

**RESPONSE:**

To be produced.

11.    All psychological and/or counseling records regarding Plaintiff.

**RESPONSE:**

To be produced.

12.    All records regarding Plaintiff's wages and other income for the last ten (10) years.

**RESPONSE:**

To be produced.

13.    All records regarding Plaintiff's employment history.

**RESPONSE:**

To be produced.

14.    All school records regarding Plaintiff.

**RESPONSE:**

To be produced.

15.    All records regarding any prior claims and/or lawsuits for personal injury which have been asserted by Plaintiff.

**RESPONSE:**

Liberty objects to this request on the grounds that it is overbroad and burdensome and harassing to the extent that it seeks to require Liberty to search through its records to determine whether prior claims have been made to Liberty. Subject to the foregoing objections, to the extent that such documents are obtained by Liberty in the course of discovery related to this lawsuit, such information will be produced.

16.    All documents regarding any defense or indemnity agreements pertaining to any party hereto and which may be applicable to the incident made the basis of this suit.

**RESPONSE:**

Liberty is not aware of any such agreements other than the policy at issue in this lawsuit.

17.    A full and complete copy of the claims file or any other documents or memoranda maintained by you regarding Plaintiff relating to the claim made the basis of this suit.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover, under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Subject to and without waiver of the foregoing objections, non-privileged documents responsive to this request will be produced.

18.    All documents or manuals used or relating to the handling of this claim, including but not limited to, any Liberty Mutual procedures manual, Bodily Injury Initiative Handbook, or Total Liberty Care-Branch Office Manual.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, it is vague and ambiguous in its reference to documents or manuals "relating to the handling of this claim," and it is overbroad in that it is not limited by relevant time or type of claim.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover, under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

Liberty further objects that this request seeks documents that are confidential and proprietary.

19.    All documents reflecting each substantially similar claim, complaint, or lawsuit made for the past five years in the State of Texas – whether in litigation, arbitration, mediation, or with any governmental or regulatory entity. "Substantially similar claims" means claims made that you violated the Insurance Code, DTPA, breached an insurance contract, or acted in violation of your duty of "good faith and fair dealing" in your handling of a claim for benefits related to the theft of property.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Liberty

further objects that this request is vague and ambiguous in its reference to "benefits related to the theft of property," and it is overbroad in that it is not limited by relevant time or type of claim or policy.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover, under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Liberty further objects that this request would require a manual review of every file of every type of claim handled within the past five years in the state of Texas to determine whether such a claim had been alleged and, therefore, this request is unduly burdensome and harassing.

Finally, Liberty objects that responding to this request would violate the privacy rights of Liberty's insureds who are not parties to this lawsuit.

20.    The entire file related to Cecilia Soto's claim, including all documents which record or preserve any factual information, observations, witness identities, or the results of any investigation, study or inquiry concerning the investigation, review, analysis, peer-review, decision-making process, or responses with respect to Dr. Soto's claim to the extent that such documents were created before Defendants were served with process in this lawsuit.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege. Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover, under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Subject to and without waiver of the foregoing objections, non-privileged documents responsive to this request will be produced.

21.    All written or recorded statements, and any summaries or reports thereof, which contain, report or record the recollection of any person concerning any matter related to the claims made in this lawsuit.

**RESPONSE:**

Liberty objects to this request on the grounds that it seeks documents protected from discovery by the work-product privilege. Subject to the foregoing objections, non-privileged documents, if any, responsive to this request will be produced.

22.    All photographs, videotapes, diagrams, sketches, films, electronically created images or other depictions of any fact or subject which is alleged to be relevant to any of the matters at issue in this case.

**Defendant's Responses to Plaintiff's Request for Production**                                      **Page 9**

**RESPONSE:**

To be produced.

23.    A copy of any procedures, policies, rules, directives or informal practices created, adopted or promulgated in the last five (5) years related to the investigation, review, analysis, peer-review, decision-making process, or response to claims for benefits under UIM/UM policies.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, it is overbroad in that it is not limited by relevant time or geographic region and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover, under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.)

Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

Liberty further objects that this request seek documents that are confidential and proprietary.

24.    A copy of any report, correspondence, memoranda, adjuster's notes or journal or log, or any other documents prepared at any time prior to the service of citation in this suit, at the request of Defendants, adjustors, claims services or investigators, regarding the facts alleged in this lawsuit of any of the injuries of damages alleged.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Subject to and without waiver of the foregoing objections, non-privileged documents responsive to this request will be produced.

25.    A copy of any analysis, audit or survey concerning Defendants' claims handling practices made in the last five (5) years.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, it is overbroad in that it is not limited by relevant time, type of claim or policy or geographic region, and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover under the UM/UIM coverage at issue. The Texas

Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Liberty further objects that this request seeks documents that are confidential and proprietary.

26.    Any and all documents (including those maintained electronically) which were generated during the course of the investigation, review, analysis, peer-review, decision-making process, or responses to Cecilia Soto's claim for benefits.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this

**Defendant's Responses to Plaintiff's Request for Production**                    **Page 12**

means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982). Subject to and without waiver of the foregoing objections, non-privileged documents responsive to this request will be produced.

27.    All internal communications memoranda, meeting notes, personal notes of the Defendants' employees, telephone records, computer stored information or other data relating or referring in any way to the facts or claims alleged in this lawsuit.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance

company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Subject to and without waiver of the foregoing objections, non-privileged documents responsive to this request will be produced.

28.    All documents, electronic data, or tangible items which discuss or reflect any acts or omissions of Defendants, or any of Defendants' employees, with respect to the investigation, review, analysis, peer-review, decision-making process, or responses to Cecilia Soto's claim, except for attorney-client communications and attorney work product dated after the date on which this suit was filed.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) There can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Liberty further objects that this request is overbroad in that it fails to specify the type or category of documents sought and it is vague and ambiguous in its reference to documents that "reflect" acts or omissions by Defendant.

29.    Any documents, handbooks, or other documents related to the use of any computer program utilized to evaluate Plaintiff's claims.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Subject to and without waiver of the foregoing objections, no computer program was used for such evaluation.

30.    Any documents, reports, or memoranda relied upon in making Defendants' decision(s) in how to respond to Cecilia Soto's claims.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover." To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).

Subject to and without waiver of the foregoing objections, non-privileged documents responsive to this request will be produced.

31.    The underwriting file for the insurance policies in effect for Cecilia Soto which could potential provide coverage for the losses claimed by Cecilia Soto, including any and all application(s) completed for such coverage.

## RESPONSE:

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Neither Plaintiff nor Defendant has raised any issue regarding underwriting, ambiguity of policy terms (the policy at issue is a standard form Texas auto policy); premium payments, or any other issue which might make underwriting relevant in this matter.

32.    Copies of the documents, manuals, and training materials, including audio and/or video tapes used in training, overseeing, or supervising your personnel employed in adjusting first party claims through insurance policies issued by you for the past five (5) years.

**Defendant's Responses to Plaintiff's Request for Production**                                    **Page 16**

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it seeks documents protected from discovery by the work product privilege. Liberty further objects that this request is overbroad in that it is not limited by time, geographic region, claim or policy.

Liberty's handling of Plaintiff's claim is not relevant to the issue of her entitlement, if any, to recover under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) Thus, there can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover."

Liberty further objects that this request seeks documents that are confidential and proprietary.

33.    Copies of all advertisements, brochures, newsletters or informative literature that you provided to the public or assisted in making available to the public regarding the benefits and services provided by you with respect to payment of benefits for property theft/loss in the last five (5) years.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Neither Plaintiff nor Defendant has raised any issue regarding underwriting, policy interpretation or ambiguity of policy terms (the policy at issue is a standard form Texas auto policy); premium payments, or any other issue which might make advertising relevant in this matter.

Liberty further objects that this request is overbroad in that it is not limited by relevant time, geographic region or type of policy and it is vague and ambiguous in its reference to "benefits for property theft/loss."

34.    Copies of the "job descriptions" for all Liberty Mutual agents, staff/employees, adjustors, or to other persons that were involved in any way in the sale of the subject policy(ies), the evaluation of Plaintiff's claim, or investigation of the claim or Defendants' post-claim response.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it is overbroad and vague and ambiguous in its request for job descriptions of anyone who was "involved in any way" in the sale of the policy or handling of the claim.

35.    Copies of the employment files for all employees of Defendants who are listed as persons with knowledge in Defendant's Initial Disclosures, as well as the person with the most knowledge of Plaintiff's claim and the handling of same in this case.

**RESPONSE:**

Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

36.    A curriculum vitae or resume, written report, bibliography, fee agreement and list of cases each expert has testified in over the past ten years, whether live or by deposition for any individual whom you may call as an expert witness in the trial of this matter.

**RESPONSE:**

Liberty has not yet designated any testifying experts, but will comply with FRCP 26 regarding any such designations.

37.    Copies of any and all communications (whether written, electronic, or otherwise) by and between Defendant and any person, company, or entity Defendant has had evaluate the medical records of Plaintiff stemming from the claims asserted by Plaintiff in this cause. This request encompasses all communications, whether letter, memo, facsimile, email, or any other communication of any kind.

**RESPONSE:**

38.    All documents relating to any health care treatment of Plaintiff, as a result of this accident in the possession, custody or control of you or your attorney or representative.

**RESPONSE:**

To be produced.

39.    All documents relating to any health care treatment of Plaintiff not as a result of this accident which are in the possession, custody or control of you or your attorney of representative.

**RESPONSE:**

To be produced.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CECILIA SOTO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. A 06CV 819 LY** |
| | § | |
| **LIBERTY MUTUAL FIRE** | § | |
| **INSURANCE COMPANY,** | § | |
| **Defendant.** | § | |

**DEFENDANT'S ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES**

To:    Cecilia Soto, by and through her attorney of Record, Mark L. Perlmutter or C. Brooks Schuelke. PERLMUTTER & SCHUELKE, LLP, 1717 W. 6th Street, Suite 375, Austin, Texas 78703.

COMES NOW Liberty Mutual Fire Insurance Company, Defendant in the above-entitled and numbered cause and serves these Objections and Responses to Plaintiff's First Set of Interrogatories pursuant to Rule 33 of the Federal Rules of Civil Procedure.

Respectfully submitted,

HANNA & PLAUT, L.L.P.
The Littlefield Building
106 E. Sixth Street, Suite 600
Austin, Texas 78701
Telephone:    (512) 472-7700
Facsimile:    (512) 472-0205

By: _____
        Catherine L. Hanna
        State Bar No. 08918280
        Charlotte Salter
        State Bar No. 15145750

ATTORNEYS FOR DEFENDANT,
LIBERTY MUTUAL FIRE INSURANCE
COMPANY

Ex: C

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the above and foregoing document has been forwarded to all parties pursuant to the Federal Rules of Civil Procedure on the ____ day   of   _____ 2007,  addressed   as follows:


Mark L. Perlmutter
C. Brooks Schuelke
Perlmutter & Schuelke, L.L.P.
1717 West Sixth Street, Suite 375
Austin, Texas 78703


_____
Catherine L. Hanna


**Defendant's Answers to Plaintiff's**
**First Set of Interrogatories**                                                                    **Page 2**

## INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge.

**ANSWER:**    See Rule 26(a)(1) disclosures.

**INTERROGATORY NO. 2:**    State all acts/and/or omissions, if any, on the part of Plaintiff which this defendant contends may constitute negligence and which this defendant contends was a contributing cause of the incident made the basis of this lawsuit.

**ANSWER:**    Liberty objects to this interrogatory on the grounds that it is premature as discovery regarding the cause of the accident is ongoing. Subject to the foregoing objection, Liberty is not currently aware of actions by Plaintiff that contributed to the cause of the accident.

**INTERROGATORY NO. 3:**  Please identify each and every claim paid by you for or on behalf of Plaintiff for the entire period Plaintiff was an insured under one of your policies.  Include in your answers the nature of the claim paid and the amount paid.

**ANSWER:**    Liberty objects to this request on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it is overbroad in that it is not limited by relevant time or policy. Any amounts paid by Liberty on unrelated insurance claims would have no bearing on Plaintiff's entitlement to recover, if any, on the subject claim. Subject to and without waiver of the foregoing objections, Liberty has made payments to Plaintiff totaling $10,000 pursuant to the Personal Injury Protection ("PIP") coverage of the policy for medical expenses related to the August 28, 2003 accident and has paid a payment of $8115 for property damage related to the August 28, 2003 accident.

**INTERROGATORY NO. 4:**  Please state what this defendant believes were the causes of the incident made the basis of this lawsuit.

**ANSWER:**    Liberty objects to this interrogatory on the grounds that it is premature as discovery regarding the cause of the accident is ongoing. Subject to the foregoing

objection, Liberty is aware that a vehicle driven by Johan Mangum rear-ended the vehicle driven by Plaintiff. Liberty is not currently aware of actions by Plaintiff that contributed to the cause of the accident

**INTERROGATORY NO. 5:** Please state the date on which this defendant first had an anticipation of litigation regarding the incident which is made the basis of this suit, and describe all facts which led defendant to such anticipation by such date.

**ANSWER:** Liberty objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objection, by February 13, 2004 it was clear that litigation was reasonably likely to result from this accident because the insurer of the rental car driven by Mangum had denied liability for coverage.

**INTERROGATORY NO. 6:** Please identify each and every fact that supports your refusal to accept or deny the claim made the basis of this suit.

**ANSWER:** Liberty objects to this interrogatory on the grounds that it is vague and ambiguous in its reference to a "refusal to accept or deny the claim." Liberty has not "refused to accept or deny the claim." Liberty has acknowledged that potential coverage exists pursuant to the uninsured/underinsured motorist provision of the policy issued to Plaintiff. However, Plaintiff has not shown that she is "legally entitled to recover" under the policy and has thus not satisfied this condition precedent to recovery.

**INTERROGATORY NO. 7:** Please identify each and every contractual provision in any insurance policy provided by you for and on behalf of Plaintiff that supports your denial of coverage for any and all claims arising out of the incident made the basis of this lawsuit. If you specifically refer to a policy provision include in your answer the name of the policy and date(s) of coverage.

**ANSWER:** Liberty objects to this interrogatory on the grounds that it is vague and ambiguous in its reference to a "refusal to accept or deny the claim." Liberty has not "refused to accept or deny the claim." Liberty has acknowledged that potential coverage exists pursuant to the uninsured/underinsured motorist provision of the policy issued to Plaintiff. The policy at issue provides the following regarding UM/UIM coverage:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

Defendant's Answers to Plaintiff's
First Set of Interrogatories                                                  Page 4

This provision that the insured be "legally entitled to recover" is a condition precedent to recovery that must be established by agreement or judgment. *See Henson v. Southern Farm Bureau Casualty Ins. Co.,* 17 S.W.3d 652 (Tex. 2000); *Wellisch v. United Serv. Auto. Ass'n,* 75 S.W.3d 53, 58 (Tex. App. - San Antonio 2002, rev. denied); *In Re Trinity Universal Insurance Company,* 64 S.W.3d 463, 467 (Tex. App. - Amarillo 2001); *Sikes v. Zuloaga,* 830 S.W.2d 752, 753-54 (Tex. App. - Austin 1992, no writ); *Sprague v. State Farm Mut. Auto. Ins. Co.,* 880 S.W.2d 415, 416-17 (Tex. App. - Houston [14th Dist.] 1993, writ denied). This requires a determination of liability and the extent of damages due as a result of Plaintiff's injuries. Plaintiff has not shown that she is "legally entitled to recover" under the policy and has thus not satisfied this condition precedent to recovery.

**INTERROGATORY NO. 8:** If you contend that Plaintiff has not complied with any term or condition of the policy made the basis of this suit which is a prerequisite for coverage under such policy, please identify the specific provision with which you contend Plaintiff has not complied.

**ANSWER:**

The policy at issue provides the following regarding UM/UIM coverage:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

This provision that the insured be "legally entitled to recover" is a condition precedent to recovery that must be established by agreement or judgment. *See Henson v. Southern Farm Bureau Casualty Ins. Co.,* 17 S.W.3d 652 (Tex. 2000); *Wellisch v. United Serv. Auto. Ass'n,* 75 S.W.3d 53, 58 (Tex. App. - San Antonio 2002, rev. denied); *In Re Trinity Universal Insurance Company,* 64 S.W.3d 463, 467 (Tex. App. - Amarillo 2001); *Sikes v. Zuloaga,* 830 S.W.2d 752, 753-54 (Tex. App. - Austin 1992, no writ); *Sprague v. State Farm Mut. Auto. Ins. Co.,* 880 S.W.2d 415, 416-17 (Tex. App. - Houston [14th Dist.] 1993, writ denied). This requires a determination of liability and the extent of damages due as a result of Plaintiff's injuries. Plaintiff has not shown that she is "legally entitled to recover" under the policy and has thus not satisfied this condition precedent to recovery.

**INTERROGATORY NO. 9:** Please fully state the basis for your refusal to tender payment to Plaintiff under any policy of insurance applicable in this matter.

**ANSWER:**    Liberty objects to this interrogatory on the grounds that it is vague and ambiguous in its reference to a "refusal to tender payment" to Plaintiff. Liberty has conceded that potential coverage exists pursuant to the UM/UIM coverage of the policy. However, the policy at issue provides the following regarding UM/UIM coverage:

> We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

This provision that the insured be "legally entitled to recover" is a condition precedent to recovery that must be established by agreement or judgment. *See Henson v. Southern Farm Bureau Casualty Ins. Co.*, 17 S.W.3d 652 (Tex. 2000); *Wellisch v. United Serv. Auto. Ass'n*, 75 S.W.3d 53, 58 (Tex. App. - San Antonio 2002, rev. denied); *In Re Trinity Universal Insurance Company*, 64 S.W.3d 463, 467 (Tex. App. - Amarillo 2001); *Sikes v. Zuloaga*, 830 S.W.2d 752, 753-54 (Tex. App. - Austin 1992, no writ); *Sprague v. State Farm Mut. Auto. Ins. Co.*, 880 S.W.2d 415, 416-17 (Tex. App. - Houston [14th Dist.] 1993, writ denied). This requires a determination of liability <u>and</u> the extent of damages due as a result of Plaintiff's injuries. Plaintiff has not shown that she is "legally entitled to recover" under the policy and has thus not satisfied this condition precedent to recovery. Liberty is under no obligation to make payment prior to the satisfaction of this condition precedent to coverage.

**INTERROGATORY NO. 10:**    Identify all of your employees, whether still employed by you or not, who have evaluated the claim of Plaintiff, authorized or recommended any settlement offers, and/or made decisions regarding any employee's authority to settle the claim of any instant Plaintiff, arising out of the collision in question.

**ANSWER:**    Liberty objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Liberty's handling of the claim is not relevant to the issue of her entitlement to recovery, if any, under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.)

There can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover." To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, information related to materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982). Subject to the foregoing objections, see Liberty's Rule 26(a)(1) disclosures.

**INTERROGATORY NO. 11:** Describe in detail any relevant conversations you (or any of your representatives) have had with (1) Plaintiff (or any of Plaintiff's representatives), and (2) any law enforcement official following the collision but prior to the filing of this lawsuit, and (3) any third party, following the collision but prior to the filing of this lawsuit.

**ANSWER:** Liberty objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it is vague and ambiguous in its reference to "relevant conversations." Liberty's handling of the claim is not relevant to the issue of her entitlement to recovery, if any, under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) There can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover." To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, information related to materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982). Subject to the foregoing objections, Liberty has had conversations with Plaintiff's attorneys and an informal interview with Plaintiff, who refused to provide a recorded statement, on April 20, 2006. That interview was conducted by John Chavez of Liberty. Liberty has not had any communications with law enforcement personnel. Liberty has had conversations with various administrative personnel employed by Plaintiff's health care providers related to identifying and obtaining relevant records of her treatment.

**INTERROGATORY NO. 12:**  Describe any information you have indicating or any reason you have to believe that Plaintiff's medical treatment claimed to have been incurred as a result of the collision was not reasonable and necessary, and identify the source(s) of your information supporting that indication or your belief.

**ANSWER:**   Liberty objects to this interrogatory on the grounds that it seeks information protected from discovery by the work product and attorney-client privileges. Subject to, and without waiver of, the foregoing objections, Liberty will supplement its answer to this response with any non-privileged responsive information.

**INTERROGATORY NO. 13:**  Please identify each person who participated in the investigation, review, analysis, peer-review, decision-making process, or responses with respect to Plaintiff's insurance claim, including a brief description of the involvement of each person identified, the date(s) of such involvement, and the current employment status of each individual.

**ANSWER:**    Liberty objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Liberty further objects that information regarding the evaluation of Plaintiff's claim is protected from discovery by the work product privilege. Liberty's handling of the claim is not relevant to the issue of her entitlement to recovery, if any, under the UM/UIM coverage at issue. The Texas Supreme Court has recently confirmed that a UM/UIM insurer is under no contractual duty to pay benefits until the insured obtains a judgment establishing his or her legal entitlement to recover benefits under the UM/UIM coverage of the policy. *See Brainard v. Trinity Universal Ins. Co.*, 2006 WL 3751572 (Tex. Dec. 22, 2006) and *State Farm v. Nickerson*, 2006 WL 3754824 (Tex. Dec. 22, 2006). The Texas Supreme Court has previously held that there can be no extra-contractual liability absent a determination that the insurer knew or should have known that it was reasonably clear that the claim was covered. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55 (Tex. 1997). In the UM/UIM context, this means that an insured who cannot prove causation and damages is precluded from prevailing on bad faith claims. *See Gates v. State Farm*, 53 S.W.3d 826 (Tex. App. – Dallas, 2001, n.p.h.) There can be no bad faith for failure to pay a UM/UIM claim prior to a determination that the insured is "legally entitled to recover." To the extent that the court allows extra-contractual claims to proceed prior to the determination of causation and damages, information related to materials relating to the filing and investigation of the insurance claim and materials relating to the insurance company's decision to either pay or not pay the claim are privileged. *See Maryland American General Ins. Co. v. Blackmon*, 639 S.W.2d 455 (Tex. 1982).  Subject to the foregoing objections, see Liberty's Rule 26(a) (1) disclosures for an identification of the personnel involved with the handling of Plaintiff's claim.

**INTERROGATORY NO. 14:**    What documents (including those maintained electronically) are routinely generated during the course of the investigation, review, analysis, peer-review, decision-making process, or responses to a claim for benefits for property theft (e.g. investigation reports; z-records; reserves sheet; electronic claims diary; claims review reports; team controversion reports, etc.)?

**ANSWER:**    Liberty objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and it is vague and ambiguous in its reference to documents generated in connection with property theft claims. Liberty further objects that information regarding the evaluation of Plaintiff's claim is protected from discovery by the work product privilege.

**INTERROGATORY NO. 15:**  Please identify (with last known contact address) every person who provided any information relating to Cecilia Soto (whether or not such information was considered by you in evaluating or responding to her claim), as well as a brief description of the information provided by each person, and whether you considered the information in making or reviewing your decision to respond to his claim.

**ANSWER:**    Liberty objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Liberty further objects that information regarding the evaluation of Plaintiff's claim is protected from discovery by the work product privilege.

**INTERROGATORY NO. 16:**  Was a computer program utilized to evaluate Plaintiff's claims? If so, please state the name of the program used, the specific data utilized by the program in evaluating the Plaintiff's claims, and all fields of data the program deems relevant in evaluating such claims, the identity of all persons that input data into said program for analysis of Plaintiff's claims, the means by which the results of the program's analysis are presented to the program user and claims adjuster(s), the identity of all persons receiving such results, and the methods by which results of the program's analysis are distributed to various end users of this information.

**ANSWER:**    Liberty objects to this interrogatory on the grounds that it is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Liberty further objects that information regarding the evaluation of Plaintiff's claim is protected from discovery by the work product privilege. Subject to, and without waiver of the foregoing objections, no computer program has been used to evaluate Plaintiff's claims.

**INTERROGATORY NO. 17:** If you denied Request for Admission 14 or 15, please identify what care you believe was unnecessary or what charges you believe were unreasonable and all reasons that support that denial.

**ANSWER:**     Will supplement.

**VERIFICATION**

STATE OF TEXAS   §
          §
COUNTY OF _____ §


BEFORE ME, the undersigned authority, on this day personally appeared _____ _____, a representative of Liberty Mutual Fire Insurance Company, who being by me duly sworn on his/her oath deposed and said that he/she has read the above and foregoing instrument, and that every statement contained therein is true and correct.


   Subscribed and sworn to before me this _____ day of _____, 2007, to certify which witness my hand and official seal.


             _____

             Notary Public, State of Texas

**Defendant's Answers to Plaintiff's**
**First Set of Interrogatories**               **Page 11**

 **Liberty Mutual.**

Liberty Mutual Group

**Fax Cover Sheet**

To: Brooks                    Company/Dept.:

Fax Number: 512-476-6218    Date: 7-25-06

From: Cheryl Hauck

Fax Number:

Comments: Cecilia Soto

Brooks, I am still waiting on prior medical records to come in from Dr. Deschner, Rubin and Caverly, as well as Brackenridge Hosp. Brackenridge is requiring their own release be signed. Please have Dr. Soto sign and return to me.

I appreciate your help with this, and your continued patience.

Cheryl

Number of pages to follow: 2

If the following pages are not received, contact: Cheryl

Name:                    Phone Number: 800-958-8844 x 379

TC-7

EX : D



**Liberty Mutual**

**Liberty Mutual Fire Insurance Company**
PO Box 40459

Houston TX 77240
Tel: (713) 460-4650 / (800) 958-8844
Fax: (713) 460-8139

*File*

June 14, 2006

PERLMUTTER & SCHEULKE, L.L.P.
1717 WEST SIXTH STREET, SUITE 375
AUSTIN TX 78703

INSURED:       CECILIA SOTO
CLAIMANT:      CECILIA SOTO
DATE OF LOSS:  08/28/2003
CLAIM NUMBER:  LA910-003891431-07

Dear Mr. Scheulke:

Thank you for your updates on Ms. Soto's condition. Please continue to keep me informed of her treatment. I wanted to update you and let you know that I am still waiting on the medical records I ordered to come in.

Please call me if you have any questions or concerns.

Sincerely,
CHERYL HAUCK
Claims Department
Ext.   379

**Helping People Live Safer, More Secure Lives**                                    FREEFRM

**Liberty Mutual.**

Liberty Mutual Fire Insurance Company
PO Box 40459

Houston TX 77240
Tel: (713) 460-4650 / (800) 958-8844
Fax: (713) 460-8139

April 26, 2006

PERLMUTTER & SCHEULKE, L.L.P.
1717 WEST SIXTH STREET, SUITE 375
AUSTIN TX 78703

INSURED:       CECILIA SOTO
CLAIMANT:      CECILIA SOTO
DATE OF LOSS:  08/28/2003
CLAIM NUMBER: LA910-003891431-07

Dear Mr. Scheulke:

Thank you for allowing us to meet with Ms. Soto last week. Once I am able to obtain the prior records, I will be able to complete my evaluation of her injury. I believe there were a couple of doctors she didn't have contact information on at the time and was going to provide that later. Would you please forward those to me as soon as possible? Also, since she is claiming an inability to work, it may be helpful to have her last 3 tax returns from when she was working in order to support her lost wage claim. We will also need some sort of documentation indicating when she would have been released to go back to work from her prior disability.

Thank you again for assisting us in gathering the needed documentation. Should you have any questions, please feel free to contact me.

Sincerely,
CHERYL HAUCK
Claims Department
Ext.  379

**Helping People Live Safer, More Secure Lives**                                                FREEFRM

**Liberty
Mutual**

Liberty Mutual Fire Insurance Company
PO Box 40459

Houston TX  77240
Tel:  (713) 460-4650  /  (800) 958-8844
Fax:  (713) 460-8139

April 04, 2006

PERLMUTTER & SCHEULKE, L.L.P.
1717 WEST SIXTH STREET, SUITE 375
AUSTIN TX  78703

INSURED:        CECILIA SOTO
CLAIMANT:       CECILIA SOTO
DATE OF LOSS:   08/28/2003
CLAIM NUMBER: LA910-003891431-07

Dear Mr. Scheulke:

In reviewing the records for Ms. Soto, they indicate she was on disability at the time of this accident.  Due to the extent of her injuries claimed and the possibility of a pre-existing condition, I will need to review her medical records for at least 3 years prior to this accident.  Please provide me with the names and addresses of all the doctors she had been under the care of since 2000.  I have enclosed an updated medical authorization for her signature.  If you prefer, I will be happy to send you copies of the records gathered.

Please contact me if you have any questions or wish to discuss this further.

Sincerely,
CHERYL HAUCK
Claims Department
Ext.   379

**Helping People Live Safer, More Secure Lives**                                    FREEFRM

**Liberty Mutual.**

Liberty Mutual Fire Insurance Company
PO Box 40459

Houston TX 77240
Tel: (713) 460-4650 / (800) 958-8844
Fax: (713) 460-8139

December 01, 2005

PERLMUTTER & SCHEULKE, L.L.P.
1717 WEST SIXTH STREET, SUITE 375
AUSTIN TX 78703

INSURED:        CECILIA SOTO
CLAIMANT:       CECILIA SOTO
DATE OF LOSS:   08/28/2003
CLAIM NUMBER:   LA910-003891431-07

Dear Mr. Perlmutter:

Please be advised that the handling of this file has been transferred to me. Please contact me at your earliest convenience so that we can discuss the current status of the case and any items that may still be needed.

Sincerely,
CHERYL HAUCK
Claims Department
Ext.  379

**Helping People Live Safer, More Secure Lives**

FREEFRM

 **Liberty Mutual.**

**Liberty Mutual Fire Insurance Company**
PO Box 40459

Houston TX 77240
Tel: (713) 460-4650 / (800) 958-8844
Fax: (713) 460-8139

March 02, 2005

PERLMUTTER & SCHEULKE, L.L.P.
1717 WEST SIXTH STREET, SUITE 375
AUSTIN TX 78703

INSURED:        CECILIA SOTO
CLAIMANT:       CECILIA SOTO
DATE OF LOSS:   08/28/2003
CLAIM NUMBER:   LA910-003891431-07

Dear Mr. Sheulke:

This letter is in regards to Cecilia Soto's Uninsured Motorist claim. In order to properly evaluate Ms. Soto's claim, we are still in need of the following:

1. An updated injury and treatment status for Ms. Soto.
2. An updated list of all treating doctors and facilities.
3. The signed Round Rock Medical Center authorization that has been mailed to your    office for Ms. Soto's signature.

Please contact me at 800-958-8844 ext 444 to discuss this matter further. I look forward to an amicable resolution of this claim.

Sincerely,
LESLIE ROCIO
Claims Department
Ext.

**Mark Perlmutter**
Board Certified Civil Trial Law
Texas Board of Legal
Specialization

**C. Brooks Schuelke**

# PERLMUTTER & SCHUELKE, L.L.P.

Hartland Plaza
1717 West Sixth Street, Suite 375 Austin, Texas 78703
Telephone (512) 476-4944    Facsimile (512) 476-6218

**Amy Litz**
Office
Manager/Paralegal

**Deborah DeHay**
Paralegal

February 28, 2006

Ms. Sheryl Houk
P.O. Box 40459
Houston, Texas 77240

|     | RE: | Claimant | : | Cecilia Soto |
| --- | --- | --- | --- | --- |
|     |     | Date of Loss | : | August 28,2003 |
|     |     | Claim No. | : | 3891431-07 |

Dear Ms. Houk

As you know, we represent Cecilia Soto in her uninsured motorist claim. We are submitting this package in an effort to resolve Dr. Soto's claims before litigation.

## Introduction

Dr. Cecilia Soto was a victim of a devastating car wreck on August 28, 2003. For the last two and a half years, Dr. Soto has been in constant physical pain rendering her unable to walk or sit for any substantial periods of time. In an effort to alleviate some of this pain, Dr. Soto has undergone three major surgical procedures. Unfortunately, none of them have successfully alleviated any of Dr. Soto's pain. But more important than the physical pain, Dr. Soto has endured immense emotional pain. For many intents and purposes, the wreck deprived Dr. Soto of the ability to be a mom.

## The Wreck

On August 28, 2003, Dr. Soto was stopped at the intersection of Loop 360 (North Capitol of Texas Highway) and Pascal Drive. She was rear ended by Johan Mangum, which pushed Dr. Soto's car into the car in front of her. During the collision, Dr. Soto's body whipped violently forward and backward, her face striking the steering wheel despite the deployment of the airbag. The accident report is attached.

## Dr. Soto's Injuries and Treatment

Dr. Soto received treatment at the scene from the Westlake Fire Department and the Austin-Travis County EMS. The EMS medics noted that Dr. Soto had c-spine/back pain, had some face pain, and had contusions to her chest wall and knee. In addition, she had a severe headache that was not present prior to the collision. The EMS crew attached her to a spine board and transported her

Ex: E

*Ms. Sheryl Houk*
*February 28, 2006*
*page 2*

to Round Rock Medical Center.

At the emergency room, Dr. Soto described her pain as being 10 out of a 10. She was given Demerol and Valium for her pain. The ER physicians took x-rays of Dr. Soto's spine and left ankle. She was eventually discharged with a prescription for Vicodin and Zanoflex.

On the following day, Dr. Soto followed up with Dr. Roy Mullins, a local chiropractor. Dr. Mullins noted that Dr. Soto had continued headaches and that she continued to have pain in her neck, back, chest, ribs and knee, and radicular pain down her right leg. Dr. Mullins also noted that she had significant bruising from the seatbelt and bruises on her forehead and knee areas. Dr. Mullins referred Dr. Soto to Dr. William Martin.

Two days later, Dr. Soto began seeing Dr. William Martin at Universal Chiropractic biweekly for intense pain and muscle spasms in her neck and back as well as continued severe headaches. Following eight months of treatment that included adjustive techniques, therapy on her cervical, thoracic, lumbar and sacral spine, trigger point therapy, massage and therapeutic exercises to increase mobility, strength and endurance, Dr. Martin determined that Dr. Soto's conditions were permanent and that she would need episodic chiropractic care several times a year as a result of the damage caused by the collision.

In addition to her multiple back and neck problems and headaches, Dr. Soto continued to experience right knee pain in the months following the collision. In January of 2004, Dr. Soto sought care from Dr. Earl Kilbride at Austin Bone and Joint Clinic for her knee pain. An MRI of her right knee showed that Dr. Soto had a posterior medial meniscal tear for which she would require arthroscopic surgery. Her surgery was performed by Dr. Kilbride at Central Park Surgery Center on February 2, 2004.

Dr. Soto continued to have pain in her knee following the surgery. Concerned with the pain, Dr. Kilbride eventually ordered an additional MRI. After this MRI, Dr. Kilbride noted a re-tear of the medial meniscus that would not heal without further intervention. Dr. Soto underwent another arthroscopic surgery on September 16, 2004 to repair the meniscus. Following the second surgery, it was advised that Dr. Soto use a hinged brace for her knee. Despite two surgeries and the brace, Dr. Soto continued to experience pain in her right knee. Additionally, she experienced an almost constant "clicking and popping" in her knee.

In October of 2004, because her knee problems were persisting, Dr. Kilbride referred Dr. Soto to physical therapy at Healthsouth. Healthsouth believed that Dr. Soto would require skilled rehabilitative therapy in conjunction with a home exercise program in order to reduce her constant pain and enable her to walk greater distances without the use of her brace. She was scheduled for therapy two to three times a week, with an estimated rehabilitation time of four weeks. During and despite the course of physical therapy, Dr. Soto still had severe pain in her right knee that made it nearly impossible to perform any functional walking.

*Ms. Sheryl Houk*
*February 28, 2006*
*page 3*

In February of 2005, Dr. Soto continued to have constant pain through her lower back and down her right extremities.  At that time, Dr. Kilbride referred her to Dr. John Stokes with Austin Brain and Spine.  Following an evaluation, Dr. Stokes sent Dr. Soto to Dr. Mark Bogar with Physical Medicine and Rehabilitation Associates for epidural steroid injections.  The injections offered some temporary help, but did not result in significant relief of her pain.  In April of 2005 it was decided that Dr. Stokes would remove the Tarlov's cyst from her S1 vertebrae in hopes that this would help alleviate her constant back pain.

Unfortunately, that surgery did not significantly alleviate Dr. Soto's pain.  She still continues to experience pain in her back and right knee despite the efforts of surgeries, steroid injections, chiropractic care, exercise, and physical therapy.  Given her history, it is likely that she will have back and knee difficulty for the rest of her life.

Cecilia Soto's medical bills to date are as follows:

| | | |
|---|---|---:|
| Austin EMS | $ | 675.25 |
| Round Rock Medical Services | $ | 1,415.50 |
| Central Park Surgery Center | $ | 9,380.23 |
| Austin Anesthesiology Group | $ | 448.50 |
| Austin Radiological Association | $ | 14,451.00 |
| The Orthopedic Store | $ | 925.00 |
| Roy Mullins, D.C. | $ | 90.00 |
| Dr. William Martin | $ | 5,860.00 |
| Dr. Earl Kilbride | $ | 4,080.00 |
| HealthSouth | $ | 2,968.00 |
| Capitol Anesthesiology Assoc. | $ | 1,615.40 |
| Mark D. Bogar, MD | $ | 1,510.00 |
| Austin Pathology Associates | $ | 103.65 |
| Austin Brain & Spine | $ | 8,760.00 |
| RS Medical | $ | 3,845.00 |
| St. David's Hospital | $ | 243.25 |
| Brackenridge Hospital | $ | 12,320.00 |
| Total | $ | 69,690.78 |

Enclosed is a complete set of those medical charges and records.

At this point, Dr. Soto is basically out of options.  Her knee has the same pain in her knee as she did before the first two surgeries.  Her last MRI also showed some floating cartilage that will need to be removed at some point.  Her back pain continues, and she still has radiating pain and numbness down her leg and to her toes.  Unfortunately, she does not have the resources to seek any additional treatment.  She needs to go back to the doctor, but simply cannot afford to pay her new deductible.  She does have hopes that if we are able to resolve this case that she will be able to find

*Ms. Sheryl Houk*
*February 28, 2006*
*page 4*

some treatment that offers her some relief. In any event, Dr. Soto's future pain and mental anguish and future medical care are a certainty.

### Out Of Pocket Expenses

In addition to the significant costs of medical care, Dr. Soto has also incurred car rental expenses and dog kenneling expenses. Dr. Soto's car rental expenses total in excess of $700.00, and her kennel expenses total $2,018.68. Those receipts are attached.

### Disfigurement

As a result of her surgical procedures, Dr. Soto has several scars, including a significant scar on the small of her back. Dr. Soto is very conscious of the scar and refuses to where various articles of clothing, including some bathing suits. A photo of the scar is attached.

### The Effect on Dr. Soto's Life

I cannot emphasize how devastating this wreck has been on Cecilia. For example, during the month of February 2006, Dr. Soto's trips out of her home have been limited to one grocery shopping trip, three times to take her daughter to school, and three trips to walk the dog. Cecilia has essentially become home-bound by her pain.

This has been a huge burden for a woman that was relatively fit and active before the wreck. Prior to the wreck, Cecilia rode horses and had recently become certified as a scuba diver. She was also able to undergo an extremely rigorous residency at Yale medical school. Now, she not only has a difficult time getting out of the house, but even has trouble navigating the home. She cannot lift anything heavier than five pounds; she has trouble bending at all; and she cannot go up and down stairs without significant pain. Her friends and family members have also told me that they believe her constant pain medication is starting to effect her cognitive skills.

More important than the day to day limitations, the wreck has hurt the three relationships Dr. Soto cherishes most: her daughter, Emily, her fiance'e, Mike, and their dog, Mystic. Mystic was more than a dog. She was a member of Dr. Soto and Emily's family. Prior to the wreck, a lot of the family's leisure time focused on Mystic. Indeed, Dr. Soto was in the process of teaching Mystic to undergo agility drills at Triple Crown Dog Academy, and she and Emily planned on taking Mystic to competitions. Sadly, Dr. Soto is no longer able to take care of Mystic. Dr. Soto can't even take Mystic for walks without experiencing significant pain. As a result, Dr. Soto and her daughter are currently trying to find a rescue society or new home for Mystic so that they are not forced to take Mystic some place where she might be euthanized. This has been extremely difficult on both Dr. Soto and Emily.

This wreck has also been very hard on Dr. Soto's relationship with her fiance'e. Instead of spending quality time with Cecilia and Emily, Mike spends most weekends doing household chores

*Ms. Sheryl Houk*
*February 28, 2006*
*page 5*

(such as laundry, vacuuming, cooking, and shopping) that Cecilia can no longer do during the week. Cecilia's injuries have also made sexual intimacy between them almost impossible. And finally, they have now had to postpone their scheduled wedding twice to accommodate Cecilia's surgeries and follow-up rehabilitation. At this point, Mike told me that he is reduced to praying "that some miracle will turn her life around."

Similarly, the wreck has been devastating to Dr. Soto's relationship to her daughter. Dr. Soto and her daughter were extremely close — they did everything together. They played; they traveled; they shopped; they danced. All of that is gone.

When interviewing clients, I usually ask a client's spouse or significant other to tell me how the client is really doing. I do this because I have found that loved ones really have a better picture of how an injury affects someone. For example, if you ask me about my previous knee surgery, I generally reply that it was alright. My wife, on the other hand, gives a much more detailed picture of how much pain and discomfort I was really in.

In this case, I wanted to know from Emily how the wreck has affected her mom. For her own reasons, she was more comfortable writing me a letter than letting me interview her. While I normally would not do this, I am attaching Emily's letter to this letter. As you can see from Emily's letter, the wreck has been hard for both her and her mom. While I will let you read the letter itself, I think Emily's statement sums up the wreck:

> I feel as if the mother I once knew is drifting away to a point at which I may never fully get her back again...I miss my mom. The mom that was always there, the mom that was able to take me shopping, the mom that was able to make a simple meal without help, the mom that was always waiting for me when I needed her the most.

In light of the foregoing, Dr. Soto is requesting Liberty Mutual to tender the limits of its UM policy.

Sincerely,

C. Brooks Schuelke

CBS/jig
Enclosures

# PERLMUTTER & SCHUELKE, L.L.P.

**Mark Perlmutter**
Board Certified Civil Trial Law
Texas Board of Legal Specialization

**C. Brooks Schuelke**

Hartland Plaza
1717 West Sixth Street, Suite 375 Austin, Texas 78703
Telephone (512) 476-4944    Facsimile (512) 476-6218

**Amy L. Litz**
Office Manager/Paralegal

**Deborah L. DeHay**
Paralegal

August 16, 2006

*Via Facsimile to: (713) 460-8139*

Ms. Cheryl Hauck
Liberty Mutual Fire Insurance Company
P.O. Box 40459
Houston, Texas 77240

RE:    Claimant    :    Cecilia Soto
        Insured      :    Cecilia Soto
        Date of Loss   :    August 28,2003
        Claim No.    :    LA910-003891431-07

Dear Cheryl:

After sending my letter of last week, our case did not get to go to trial, and I have had the opportunity to visit with my client. We are both frustrated with the length of time that Liberty Mutual has had the claim. As a result, I am going to go ahead and start drafting the pleadings and discovery so we can move the ball forward. I will hold off filing the suit until next week on the off chance that Liberty Mutual is able to tender its policy limits before that time.

If you have any questions, please feel free to call me.

Sincerely,

C. Brooks Schuelke

Ex: F

## PERLMUTTER & SCHUELKE, L.L.P.

**Mark Perlmutter**
Board Certified Civil Trial Law
Texas Board of Legal Specialization

**C. Brooks Schuelke**

Hartland Plaza
1717 West Sixth Street, Suite 375 Austin, Texas 78703
Telephone (512) 476-4944    Facsimile (512) 476-6218

**Amy L. Litz**
Office Manager/Paralegal

**Deborah L. DeHay**
Paralegal

August 28, 2006

*Via Facsimile to: (713) 460-8139*
Mr. John Franciosa
Liberty Mutual Fire Insurance Company
P.O. Box 40459
Houston, Texas 77240

RE:  Claimant      :  Cecilia Soto
     Insured       :  Cecilia Soto
     Date of Loss  :  August 28, 2003
     Claim No.     :  LA910-003891431-07

Dear John:

I have spoken to my client, and she has agreed to give Liberty Mutual another week to review her claim. However, if Liberty Mutual has not tendered the policy limits by the close of business Thursday, then we will be filing suit Friday.

We do not want to take any steps that might increase the costs of this claim, but there is no real excuse for the delay in handling this claim. We have been in constant contact with the numerous adjusters on this claim, constantly updating them on Dr. Soto's condition, up until the end of February 2006, when we sent a formal settlement package. In April, Ms. Hauck called and said that she would like to conduct an interview of Dr. Soto. That was conducted on April 20. On April 26, we received a letter requesting additional information. That information was provided on May 2, 2006, almost four months ago. And yet, there has still not been any movement toward resolution of the claim.

This delay is particularly troubling for Dr. Soto because it is delaying her treatment. Dr. Soto has exhausted all of her personal funds and is not able to seek additional treatment for her injuries since Liberty Mutual refuses to pay the amounts due her.

If you have any questions, please feel free to call me.

Sincerely,

C. Brooks Schuelke

EX: 6

**Liberty Mutual™**

Liberty Mutual Fire Insurance Company
PO Box 40459

Houston TX 77240
Tel: (713) 460-4650 / (800) 958-8844
Fax: (603) 334-8232

August 31, 2006

PERLMUTTER & SCHUELKE, L.L.P.
1717 WEST SIXTH STREET, SUITE 375
AUSTIN TX 78703

ATTN C. BROOKES SCHUELKE

INSURED:        CECILIA SOTO
CLAIMANT:       CECILIA SOTO
DATE OF LOSS:   08/28/2003
CLAIM NUMBER:   LA910-003891431-07

Dear Mr. Schuelke:

This serves as a respone to your letter dated Monday, August 28, 2006 at which time you have made a demand for the tendering of our policy limits on behalf of your client Cecilia Soto. I advised you recently that this UM claim has been reassigned to me for further handling.

Upon review of the file it is clear there has been identified signficant medical issues and treatment with numerous medical providers over the past 10 years. Therefore we are in the process of gathering all present and past medical records to properly evaluate this claim for settlement purposes. We are still gathering medical records with requests already submitted for Round Rock Medical Center, Dr. Richard Rubin, Brackenridge Hospital, Dr. Ola Caverly, and Dr. Deschner.

Upon receipt of these records, I will evaluate this claim for settlement purposes. I am again asking that you provide any disability statements available for the past and present disability alleged from this accident while Ms. Soto was actively on disability at the time of the loss. I thank you for your patience and hope we can agree to additional time prior to filing suit in this matter.

Sincerely,
JOHN FRANCOSA
Claims Department
Ext. 451

E X : H